## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JASON LEE KASZKO, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 22-2316-KHV |
| | ) | |
| RSH & ASSOCIATES, LLC and | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Jason Lee Kaszko filed suit against RSH & Associates, LLC ("RSH") and Experian Information Solutions, Inc. ("Experian"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.[1]  This matter comes before the Court on Defendant RSH & Associates, LLC's Motion For Summary Judgment On Plaintiff's Claims (Doc. #80) filed July 6, 2023.  For reasons stated below, the Court overrules defendant's motion.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735,

---

[1]      Plaintiff brought various other claims against RSH and Experian.  See Petition (Doc. #1-1) filed August 10, 2022.  On June 5, 2023, the Court sustained plaintiff's Motion For Entry Of Judgment Pursuant To Fed. R. Civ. P. 68 (Doc. #69) filed April 24, 2023 and directed the Clerk to enter judgment on plaintiff's claims against Experian.  See Judgment (Doc. #74).  Plaintiff and RSH also stipulated to the dismissal of plaintiff's claim under Count II against RSH.  See Stipulation Of Dismissal Of Count II Only Of Plaintiff's Complaint Against Defendant/Third-Party Plaintiff RSH & Associates, LLC (Doc. #70) filed May 4, 2023.

740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

A defendant moving for summary judgment to test an affirmative defense must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.  Helm v. Kansas, 656 F.3d 1277, 1284 (10th Cir. 2011).  In other words, defendant may only prevail at the summary judgment stage if it proves its affirmative defense "so clearly that no rational jury

could find to the contrary." Mehus v. Emporia State Univ., 222 F.R.D. 455, 477–78 (D. Kan. 2004) (quoting Stanziale v. Jargowsky, 200 F.3d 101, 108 (3d Cir. 2000)).

**Factual Background**

The following facts are undisputed or, where disputed, viewed in the light most favorable to plaintiff, the non-movant.

Plaintiff's deceased father, Frank Kaszko, incurred a debt of $3,686.75 during his 2020 residency at Stratford Commons Rehab & Health Center ("Stratford Commons"). Stratford Commons is affiliated with Tutera Senior Living & Health Care, LLC ("Tutera").[2] Plaintiff's father executed a guaranty agreement. Plaintiff's name does not appear in print on the guaranty agreement and the record does not suggest that plaintiff signed the guaranty agreement either for himself or on behalf of his father.

In April of 2017, RSH, a debt collector, agreed to collect certain debts owed to Tutera, including Frank Kaszko's debt. See Confidential Collection Services Agreement (Doc. #81-1). RSH provides monthly account updates to credit reporting agencies. Exhibit A, Randy Hairgrove Deposition (Doc. #86-1) at 13.

On August 28, 2020, Tutera submitted a spreadsheet to defendant that listed debts for defendant to collect, including the $3,686.75 debt accrued from Frank Kaszko's residency. The spreadsheet listed plaintiff as guarantor for the debt. In addition to the spreadsheet, Tutera gave defendant access to its database, PointClickCare, which contains additional documents for the accounts that Tutera retained defendant to collect. As to the account associated with plaintiff's

---

[2]    On August 10, 2023, on agreement between RSH and Tutera, the Court dismissed RSH's third-party complaint against Tutera and Tutera's counterclaims against RSH. See Order (Doc # 91).

father's debt, the database included a copy of the guaranty agreement which plaintiff's father executed. Defendant did not attempt to access the system.

On August 28, 2020, defendant sent plaintiff a notice letter. The letter advised plaintiff of the debt and his ability to dispute its validity. Plaintiff did not respond. On October 14, 2020, defendant left plaintiff a voicemail message but he did not respond. On November 18, 2020, defendant called plaintiff. During the call, plaintiff informed defendant that he refused to pay the debt. On September 27, 2021, defendant again called plaintiff. Plaintiff informed defendant that the debt was his father's and that he was not responsible for it.

On September 28, 2021, defendant sent plaintiff a demand letter. The letter advised plaintiff that Tutera had "pre-authorized" RSH to take the necessary steps to prepare his account for escalation and advised plaintiff to contact RSH if he wished to "avoid litigation." Exhibit D, (Doc. #81-4). On April 28, 2022, in a letter, plaintiff advised defendant that he disputed the debt. On May 4, 2022, plaintiff's counsel wrote to Tutera and denied that plaintiff ever agreed to guarantee his father's debt.

On May 5, 2022, defendant changed its internal account status for the debt from "active" to "disputed." On May 10, 2022, Tutera directed defendant to stop collection and close the account associated with the debt. Two days later, on May 12, 2022, defendant closed the account and ceased its efforts to collect the debt. Defendant did not inform the credit reporting agencies that the account was in dispute.

## Procedural Background

On June 31, 2022, in the District Court of Wyandotte County, Kansas, plaintiff filed this suit against RSH and Experian. On August 10, 2022, defendants removed the case to federal court. Plaintiff alleges that RSH violated the FDCPA by intentionally attempting to collect a debt that

did not belong to him and by falsely representing its intent to sue plaintiff.  See Pretrial Order

(Doc. #77) at 12.  Plaintiff claims that defendant violated the FDCPA because it (1) falsely

represented that plaintiff was responsible as a guarantor for his father's debt to Tutera,

(2) erroneously threatened to bring suit against plaintiff if he did not pay the debt in a timely

manner, and (3) failed to inform Experian, a credit reporting agency, that the debt was in dispute.

See id. at 7–8.

Defendant seeks summary judgment on each element of its affirmative defense that any

violation of the FDCPA was the result of bona fide error.  See 15 U.S.C. § 1692(k)(c).

### Analysis

Congress enacted the FDCPA to protect consumers from improper or abusive debt

collection efforts.  15 U.S.C. § 1692.  Defendant argues that it is entitled to summary judgment

because any alleged violation of the FDCPA was the result of bona fide error.[3]

The bona fide error defense, set forth in 15 U.S.C. § 1692(k)(c), is an affirmative defense

that shields debt collectors from liability for violations of the FDCPA.  Johnson v. Riddle, 443

F.3d 723, 727 (10th Cir. 2006).  To prevail on a bona fide error defense, defendant must show that

the violation was (1) unintentional, (2) made in good faith and (3) made despite the maintenance

of procedures reasonably adapted to avoid the error.  See id. at 727–28; see also Caputo v. Pro.

Recovery Servs., Inc., 261 F. Supp. 2d 1249, 1257 (D. Kan. 2003) (bona fide errors are errors

made in good faith).

For reasons stated below, defendant is not entitled to summary judgment on any of the

three elements of its affirmative defense because a rational jury could find in favor of plaintiff on

---

[3]        In its Answer, defendant denies that it violated the FDCPA.  See Defendant RSH
& Associates, LLC's Answer (Doc #21), ¶¶ 9, 52–68.

each element.

## I.      Whether The Alleged Violations Were Unintentional

Under the first prong of the bona fide error defense, defendant must show that the violations were unintentional, not that the underlying acts themselves were unintentional.  See Johnson, 443 F.3d at 728.  This prong is a subjective test.  See id.

Defendant argues that it did not have the specific intent to violate the FDCPA because it believed that plaintiff was the guarantor on the debt and intended to bring suit against plaintiff if he did not pay the debt in a timely manner.  See Motion For Summary Judgment (Doc #81) at 4, 7. Plaintiff correctly notes that defendant has offered no evidence that it actually believed such facts. Therefore, it is not entitled to summary judgment on the first prong of its good faith defense.

## II.     Whether RSH Made The Alleged Errors In Good Faith And Maintained Procedures Reasonably Adapted To Avoid Such Errors

The second and third prongs of the bona fide error defense require that defendant establish that its errors were in good faith and that it maintained procedures reasonably adapted to avoid such errors.  See Johnson, 443 F.3d at 729 (citing 15 U.S.C. § 1692(k)(c)).  An error is in good faith under the second prong if it is objectively reasonable.  See id.  The third prong of the defense requires a two-step inquiry: (1) whether the debt collector "maintained"—i.e., actually employed or implemented—procedures to avoid errors; and (2) whether the procedures were "reasonably adapted" to avoid the specific error at issue."  Id.

### A.    False Representations Of The Debt

Plaintiff alleges that defendant falsely represented in two letters and two phone calls that plaintiff was responsible as a guarantor for his father's debt to Tutera.  See 15 U.S.C. § 1692(e)(2) (falsely representing character, amount or legal status of debt); (e)(10) (using false representation

or deceptive means to attempt to collect debt); 1692(f)(1) (attempting to collect debt not authorized by agreement or permitted by law).  Defendant argues that as a matter of law, any erroneous representation was in good faith because it reasonably relied on information in the Tutera spreadsheet which indicated that plaintiff was a guarantor.  If a debt collector reasonably relies on the debt reported by a creditor, the debt collector is not liable for errors that stem from such reliance.  See Solomon v. Baer & Timberlake, P.C., 504 F. App'x 702, 705 (10th Cir. 2012).

As to defendant's first letter and call to plaintiff, plaintiff has presented no evidence that defendant had any reason to further inquire whether plaintiff was party to the guaranty agreement. Even so, defendant has not presented sufficient evidence of the circumstances of those communications or whether Tutera had a history of providing it accurate information.  The evidence of record would not compel a jury to find that RSH reasonably relied on Tutera's spreadsheet.

With regard to defendant's second call and letter, after plaintiff notified defendant that he was not responsible for the debt, a rational jury could find that a reasonable debt collector would have accessed Tutera's database to verify whether plaintiff had signed the guaranty agreement. Plaintiff has presented evidence that Tutera gave defendant access to its internal database which contained the guaranty agreement.  Defendant never accessed the database, however, to investigate whether plaintiff was a party to the guaranty agreement.  A cursory examination of the agreement would have indicated that only plaintiff's father was responsible for the debt.  This evidence creates a genuine issue of disputed fact whether defendant acted reasonably in not reviewing the guaranty agreement after plaintiff disputed he was a party to it.  The Court therefore overrules defendant's motion for summary judgment in this regard.

Defendant argues that it is entitled to summary judgment on the third prong because it had

reasonable procedures to avoid erroneously representing that a non-responsible party was responsible for the debt. Defendant has presented evidence that it has written "Debtor Dispute" policies, which allegedly avoid errors about what specific parties are responsible for a given debt. Defendant offers no evidence, however, that it employs or implements these policies. See Johnson, 443 F.3d at 729. Likewise, it does not cite specific policy provisions that are reasonably adapted to avoid the specific error here, i.e. attempting to collect a debt from a family member who is not legally responsible for it. The Court therefore overrules defendant's motion for summary judgment on this issue.

### B. Threat To Take Legal Action

Plaintiff alleges that even though defendant had no authority from Tutera to initiate litigation, its letter threatened plaintiff to contact defendant to avoid litigation. See 15 U.S.C. § 1692(e)(5) (threatening to take action that cannot legally be taken or that is not intended to be taken). Defendant argues that as a matter of law, any erroneous representation was reasonable because Tutera had pre-authorized it to consider bringing a lawsuit against plaintiff. Defendant has presented no evidence that Tutera authorized it to initiate litigation against plaintiff or that it intended to bring suit against plaintiff absent authorization from Tutera. On this record, defendant has not shown that it is entitled to summary judgment on the issue whether its erroneous representation about potential litigation was objectively reasonable. Likewise, defendant offers no evidence which demonstrates adequate procedures to avoid errors about threatening litigation before a client has authorized the filing of a lawsuit. The Court therefore overrules defendant's motion for summary judgment on this issue.

### C. Communication Of False Credit Information

Plaintiff alleges that after he told defendant that he disputed the debt, defendant failed to

inform Experian of this fact.  See 15 U.S.C. § 1692(e)(8) (communicating or threatening to communicate credit information which is known or which should be known to be false, including failure to communicate that debt is disputed).  Under Section 1692(e)(8) of the FDCPA, a debt collector has an affirmative duty to notify credit reporting agencies that a consumer disputes the debt if the debt collector knows of the dispute when it makes a report to a credit reporting agency. Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1189 (10th Cir. 2013).

Plaintiff has presented evidence that he notified defendant that he disputed the debt on November 18, 2020 but defendant did not notify Experian of this fact in subsequent monthly account updates.  Defendant offers no evidence to explain why it refused to note defendant's account as disputed.  Nor does it identify any procedures that it maintains to avoid such errors.[4] On this record, a reasonable factfinder could conclude that in failing to report the dispute to Experian, defendant did not act reasonably.  The Court therefore overrules defendant's motion for summary judgment on the second and third prongs of its bona fide error defense to plaintiff's claim for communication of false credit information to a credit reporting agency.

**IT IS THEREFORE ORDERED** that Defendant RSH & Associates, LLC's Motion for Summary Judgment on Plaintiff's Claims (Doc. # 80) filed July 6, 2023 is **OVERRULED**.

Dated this 1st day of September, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[4]     Indeed, defendant's own procedures indicate that after receipt of a written or verbal dispute from the alleged debtor, the FDCPA required it to identify the debt as disputed in subsequent credit updates to the reporting agency.  See Exhibit E (Doc. #81-5) at 1.